[780 NYS2d 567]

JOHN SLATE, Respondent, v SCHIAVONE CONSTRUCTION COMPANY, Appellant.

First Department, July 8, 2004

### APPEARANCES OF COUNSEL

*Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, New York City (*Richard E. Lerner* and *Meredith Drucker* of counsel), for appellant.

*Cascione, Purcigliotti & Galluzzi, P.C.*, New York City (*Thomas G. Cascione* of counsel), for respondent.

### OPINION OF THE COURT

TOM, J.

Plaintiff John Slate, an employee of nonparty G.M. Crocetti, Inc., sustained injury in a fall from a scaffold affixed to a flatbed truck while working within the Lincoln Tunnel on September 3, 1997. On September 1, 2000, two days prior to the expiration of the statute of limitations, plaintiff commenced this action by filing the summons and complaint, listing defendant Schiavone's

mailing address as "40th Street & 11th Avenue, New York, New York 10018." The complaint states claims under Labor Law §§ 200, 240 (1) and § 241 (6), alleging that the truck-mounted scaffold was not safely secured, as the result of which, plaintiff fell, sustaining injury to his right knee.

On October 5, 2000, at 1:43 P.M., plaintiff served the summons and complaint upon the corporate defendant by personally delivering a copy to one " 'John' Thomas" at 40th Street and 11th Avenue. Mr. Thomas is identified as a "managing agent" of Schiavone and described as a male Caucasian, 40 years of age, brown hair, 165 pounds, standing 5 feet, 11 inches in height. Defendant failed to appear in answer to the summons and complaint and, on January 10, 2001, plaintiff mailed Schiavone a certified letter alerting it of a potential default. The delivery receipt was returned by the post office unsigned. A default judgment was subsequently entered against defendant on January 15, 2002. Shortly thereafter, the parties, by stipulation dated March 8, 2002, agreed to extend Schiavone's time to answer to April 9, 2002. However, defendant never appeared and, instead, filed a motion to dismiss the complaint on the ground that plaintiff lacked in personam jurisdiction over defendant (CPLR 3211 [a] [8]).

Defendant conceded that it had performed construction work at 40th Street and 11th Avenue but denied having a business office in New York. It denied any knowledge of any employee named " 'John' Thomas" purportedly serving as a "managing agent" at the construction site. Defendant therefore contended that personal service had not been properly effected upon an officer, director, managing agent or cashier of Schiavone pursuant to CPLR 311 (a) (1), or upon the Secretary of State or a registered agent, as provided in Business Corporation Law § 306 (b).

In opposition, plaintiff stated that counsel had recently assumed his representation from a previous attorney, who had brought a workers' compensation claim on his behalf. The address used in serving process was found in the previous attorney's notes and assumed to be correct. The affidavit indicating that personal service had been made upon defendant's managing agent led counsel to believe that all was in order. Plaintiff, in his opposition papers, also informally requested relief in the form of a traverse hearing to resolve the issue of service or, in the alternative, sought an extension of time to make late service upon Schiavone pursuant to CPLR 306-b.

Supreme Court denied defendant's application to dismiss the complaint, exercising its discretion to extend the time for service in the interest of justice (CPLR 306-b). The court noted that plaintiff would be severely prejudiced by the loss of the opportunity to have his Labor Law claims adjudicated "simply because his attorney made a patently unwise assumption concerning defendant's address and then failed to pursue even a cursory investigation into the address's validity when indications that the address might be incorrect arose."

Since defendant fully addressed the issue of whether plaintiff should be afforded relief pursuant to CPLR 306-b in its moving papers, the absence of a formal motion by plaintiff was not an impediment to the court's award of such relief upon his informal request (*see e.g. Kurtz v American Export Indus.*, 49 AD2d 557 [1975], *affd* 39 NY2d 738 [1976]). The relief granted was proper where plaintiff's complaint and affidavit indicated a meritorious Labor Law claim, plaintiff's newly retained counsel made a good faith, though flawed, attempt to serve defendant well within the statutorily prescribed 120-day period, and there was no showing that the grant of the requested extension would prejudice defendant (*see Leader v Maroney, Ponzini & Spencer*, 97 NY2d 95 [2001]).

The dissent expresses concern that the motion court essentially abdicated applying any standard when it exercised its discretion to grant an extension of time within which plaintiff might properly serve the complaint. Initially, the request in this case invoked the court's interest of justice jurisdiction, as provided by CPLR 306-b, a more flexible standard than the alternative good cause standard employed in that provision. While the good cause standard requires a showing of due diligence regarding service of the complaint, the interest of justice standard allows the court to consider diligence as "simply one of many relevant factors" (*Leader* at 104) in determining whether or not to exercise its statutory power "to accommodate late service that might be due to mistake, confusion or oversight" (*Leader* at 105, quoting NY St Bar Assn Commercial & Fed Litig Section Comm on Civil Practice Law & Rules, Legislation Report No. 88, Bill Jacket, L 1997, ch 476, at 14). In that context, I respectfully disagree with the dissent's characterization of the court's exercise of its discretionary power.

The record indicates that the accident occurred in September 1997, and the complaint was filed on September 1, 2000. This was shortly before the expiration of the statute of limitations,

but timely nonetheless. A month later, on October 5, 2000, plaintiff served defendant at the job site where plaintiff had been injured. Defendant admits to having performed work at that location, but claimed to have no business office there or elsewhere in New York. On the latter point, it appears that defendant, in fact, does maintain business offices in New York City. Plaintiff points out that a business directory search on the Internet for the business listing of "Schiavones" in New York had produced addresses in both Manhattan and the Bronx.

Although service at the job site was ineffective, the manner and place of service was not manifestly a display of bad faith. The dissent seems to disagree and even seems to suspect that substitute counsel was being duplicitous and that the original faulty service was perhaps intentionally misdirected. However, there is simply no evidence of record to support such a conclusion. By contrast, plaintiff's apparent good faith was underscored when counsel followed up with a letter to defendant on January 10, 2001, alerting defendant of a potential default. When the certified mail return receipt came back, albeit unsigned, counsel reasonably believed that defendant had received the letter. While the dissent states that it is "hard-pressed to understand how the return of an *unsigned* return-receipt card could reasonably justify a belief that the letter had been received," it ignores the fact that the letter itself was not returned as well as plaintiff's counsel's explanation that, in his experience, it was not an unusual occurrence for the postal service to fail to properly process certified mail return-receipt cards. Thus, while appropriate caution may have warranted a further investigation regarding proper service on defendant, the record does not readily evince bad faith. To the contrary, it indicates a certain diligence, even if it was misplaced and inadequate.

In reviewing the court's exercise of discretion in this case, we note that, for present purposes, there appears to be a valid Labor Law § 240 claim arising from this alleged fall from a defective scaffold. There can be no dispute that plaintiff would be severely prejudiced if he were not granted relief under CPLR 306-b in that his action would be barred and he would be deprived of the opportunity to seek redress for his injuries from defendant. As already noted, plaintiff's counsel, though careless, did not act without diligence after plaintiff learned that process was improperly served upon defendant. Though he unadvisedly relied on prior counsel's information regarding where to send

process, this was not a case of gamesmanship or bad faith; in fact, when the mistake became known, counsel tried to rectify the error by agreeing to extend the time for defendant to answer. The lapse of time from the September 2000 improper service to March 2002 was not egregious and, in fact, counsel acted expeditiously when it became apparent that a default would be entered and again when it became apparent that defendant had not been served. Furthermore, prejudice involves impairment of a defendant's ability to defend on the merits and not the loss of a procedural or technical advantage; the expiration of the statute of limitations does not, in and of itself, constitute prejudice to defendant (*see Busler v Corbett*, 259 AD2d 13 [1999]). Here, as the motion court found, defendant has not demonstrated any prejudice that would equitably compel dismissal, especially if defendant's own accident report and other relevant documentation within its control remain available.

In its effort to refute the foregoing, the dissent suggests that plaintiff's counsel arguably did not begin to use due diligence in this matter until February 2002, $4^{1}/_{2}$ years after the accident. However, our primary concern in assessing whether the motion court abused its discretion is with the conduct of counsel from the time he commenced the action, and not the conduct of his predecessor from the time of the September 1997 accident.

Plaintiff's present counsel prepared the summons and complaint in mid-August 2000, using the address for defendant found in his predecessor's notes. When defendant did not answer, counsel followed up with a default letter. After months passed without a response to the default letter, counsel, who had been displaced for six weeks due to the September 11, 2001 attacks on the World Trade Center, moved for a default judgment. The default was entered on January 15, 2002, and counsel diligently attempted to provide defendant with notice of that default. As the dissent notes, on February 5, 2002, defendant admittedly received notice of the default by mail addressed to another job site, demonstrating that defendant could be given actual, if not legal, notice by mail sent to its job site. Thus, during the pertinent 18-month period (not the $4^{1}/_{2}$ years as alluded to by the dissent) beginning with August 2000, when he drafted the complaint, until February 2002, when defendant admittedly received notice, counsel made continuous good faith efforts to give defendant notice of the action.

The dissent contends that this analysis ignores the decisions in cases such as *Hafkin v North Shore Univ. Hosp.* (279 AD2d

86 [2000], *affd* 97 NY2d 95 [2001]), *Ludemann v Maisel* (292 AD2d 428, 429 [2002]) and *Estate of Jervis v Teachers Ins. & Annuity Assn.* (279 AD2d 367 [2001]). However, it is the dissent that ignores the key distinction between those cases and this matter.

In *Hafkin*, the first action was commenced one day before the expiration of the statute of limitations, and the defendant, a readily accessible hospital, was never served. The second action was commenced after the expiration of the statute of limitations. In *Ludemann*, no proof was offered that the plaintiff made any attempt to serve the defendant doctor within the 120-day period after the complaint was filed, as required by CPLR 306-b. In *Estate of Jervis*, after the limitations period on the claim and for making service under CPLR 306-b had expired, plaintiff's counsel learned that the process server never served the defendants. In stark contrast, here the action was commenced on September 1, 2000, and counsel received an affidavit of service from a process server indicating that defendant had been served within the 120-day period required by CPLR 306-b. Likewise, in *Yardeni v Manhattan Eye, Ear & Throat Hosp.* (9 AD3d 296 [2004]), the plaintiff failed to effect service within the prescribed 120-day period. Clearly, these cases are distinguishable.

The dissent seems to suggest that if an attorney does not independently verify whether the original service was properly made by the process server, then the court should not invoke its interest of justice jurisdiction under CPLR 306-b to permit late service. This, in essence, would impose on an attorney who receives an affidavit of service from a process server the burden to conduct his or her own traverse hearing to determine if the service was valid. This simply is not the law.

In *Earle v Valente* (302 AD2d 353 [2003]), the Appellate Division, Second Department found that the attempted service of the summons and complaint was defective as a matter of law because the process server did not meet the due diligence requirement of CPLR 308 (4). Nonetheless, the Court granted the plaintiff's cross motion for an extension of the time to serve the summons and complaint in the interests of justice on the ground that "[t]he extension afforded by CPLR 306-b is applicable where, as here, service is timely made within the 120-day period but is subsequently found to have been defective" (*id.* at 354 [citations omitted]; *see also Simonovskaya v Olivo*, 304 AD2d 553 [2003]). In *Wideman v Barbel Trucking* (300 AD2d

184 [2002]), this Court granted an extension under the interests of justice standard of CPLR 306-b, notwithstanding invalid service. We reasoned that even if the plaintiff failed to exercise diligence in his efforts to serve the defendant, the separate interests of justice standard "is intended to be an *additional and broader standard*' to accommodate late service that might be due to mistake, confusion or oversight" (*id.* at 185 [citation omitted]).

The dissent's representation that plaintiff's counsel waited yet another five months before finally moving for an extension of time to serve process is not entirely an accurate portrayal of events. On March 8, 2002, after being informed by defendant's counsel that defendant had not been properly served, plaintiff's counsel stipulated to give defendant until April 9, 2002 to answer. Defendant then waited until the last possible day to interpose its answer and, on May 28, 2002, sought to dismiss the complaint on jurisdictional grounds in a motion returnable on June 20, 2002. Plaintiff's counsel, referring to his consent to vacate the default, lamented in his opposing affidavit that the filing of defendant's motion proved that "no good deed goes unpunished," reflecting his mistaken assumption that defendant would answer on the merits and that jurisdiction would not be challenged. In his affidavit, counsel also asserted that a traverse hearing was required and that, in any event, plaintiff was entitled to relief under CPLR 306-b and should be allowed to make late service. In light of the foregoing, the five-month delay to which the dissent alludes is in large measure attributable to defendant's, not plaintiff's, conduct. In this regard, contrary to the dissent's interpretation of the facts and the conclusion that plaintiff delayed in seeking an extension of time to serve defendant, it remains that defendant waited until the last day under the stipulation to serve an answer, a period of one month, and then waited almost another two months before moving to dismiss for lack of personal jurisdiction, which prompted plaintiff to immediately request an extension. Thus, plaintiff acted promptly under the circumstances.

Although counsel's efforts may have fallen short due to mistake, confusion or oversight, we cannot say that the motion court improvidently exercised its discretion in finding an interest of justice dimension in this apparently meritorious case so as to allow it to be tried on its merits.

Accordingly, the order of the Supreme Court, New York County (Marilyn Shafer, J.), entered October 24, 2002, which, to

the extent appealed from, denied defendant's motion to dismiss the complaint and conditionally granted plaintiff's request for an extension of time to effect service pursuant to CPLR 306-b, should be affirmed, without costs.

FRIEDMAN, J. (dissenting). CPLR 306-b requires a plaintiff to serve the summons and complaint on the defendant within 120 days after the filing of such papers with the court. The statute further provides, however, that the 120-day period for service may be extended by the court "upon good cause shown *or in the interest of justice*" (emphasis added). The Court of Appeals has explained that the latter "interest of justice" standard "requires a careful judicial analysis of the factual setting of the case and a balancing of the competing interests presented by the parties," including

> "diligence [in attempting to effect service], or lack thereof, . . . expiration of the Statute of Limitations, the meritorious nature of the cause of action, the length of delay in service, the promptness of a plaintiff's request for the extension of time, and prejudice to defendant." (*Leader v Maroney, Ponzini & Spencer*, 97 NY2d 95, 105-106 [2001].)

Today, instead of engaging in the "careful judicial analysis" the Court of Appeals called for in *Leader*, the majority affirms an extension granted under the rubric of CPLR 306-b's "interest of justice" standard that, given the facts of this case, essentially redefines the statutory phrase to mean "available for the asking." Contrary to the majority's assertion that plaintiff's counsel engaged in "continuous good faith efforts to give defendant notice," what occurred here, in a nutshell, is that plaintiff's counsel placed blind faith, for a year and a half after the commencement of this personal injury action, in a years-old, unverified street corner address found in the notes of plaintiff's prior counsel, who had been retained for a different purpose. As a result, when defendant finally received its first actual notice of the action (in February 2002), *nearly 4¹/₂ years* had passed since plaintiff's accident had occurred (in September 1997); *nearly a year and a half* had passed since the action had been commenced and the statute of limitations had expired (in September 2000); and *more than a year* had passed since the 120-day service period had expired (in December 2000). Moreover, yet another five months went by after defendant's receipt of notice of the action in February 2002 before plaintiff finally sought an extension of time to serve process the following July.

It is beyond dispute that the extremely protracted delay of defendant's receipt of notice of this action has resulted entirely (except for one six-week period, as discussed below) from the "careless" conduct (as the majority euphemistically describes it) of plaintiff's counsel. Moreover, the merits of this action are far from clear based on plaintiff's altogether vague and conclusory affidavit, the entire substance of which is reproduced in a few lines in the opening paragraph of the majority opinion. Under all of the circumstances, the factors relevant to the "interest of justice" analysis weigh so heavily against granting the belatedly sought extension that, in my view, Supreme Court's grant of such relief was an abuse of discretion as a matter of law. Indeed, if the facts of this case do not mandate denial of an extension under CPLR 306-b, there are essentially no limits to the availability of relief under the "interest of justice" prong of the statute. Accordingly, I respectfully dissent.

A detailed examination of "the factual setting of the case" (*Leader*, 97 NY2d at 105) should make clear that a careful "balancing of the competing interests presented by the parties" (*id.*) does not support the result reached by the majority. I therefore turn to the facts.

Plaintiff was allegedly injured on September 3, 1997, while he was engaged in work, as a subcontractor's employee, on a renovation project at the Lincoln Tunnel. Defendant was the general contractor for the project. Plaintiff did not file the summons and complaint to commence this action against defendant until September 1, 2000, two days before the expiration of the statute of limitations. The subsequently filed affidavit of service represented that, on October 5, 2000, the summons and complaint were delivered to one " 'John' Thomas," purportedly a "managing agent" of defendant, at 40th Street and 11th Avenue in Manhattan, a location near the entrance to the Lincoln Tunnel. Other than the purported service on " 'John' Thomas," plaintiff does not claim to have made any effort to serve defendant within the 120-day period provided by CPLR 306-b, either by delivery to the Secretary of State pursuant to Business Corporation Law § 306, or by delivery to an officer, director or other person specified by CPLR 311 (a) (1) (all such persons in defendant's employ being located at its New Jersey corporate headquarters).

It is undisputed that defendant, a New Jersey corporation with its principal place of business in that state, never actually received the papers that plaintiff purported to serve on October

5, 2000. Defendant avers that it has no record of having had an employee named " 'John' Thomas" on October 5, 2000, or of having had an authorized agent by that name. Further, it is undisputed that defendant has never had a permanent office anywhere in New York State, and thus had no such office at the location where plaintiff purported to serve it. While defendant does maintain *temporary* offices in trailers at the locations of its projects, and evidently had such a temporary office at the Lincoln Tunnel site where plaintiff worked while that job was ongoing, it is uncontroverted that defendant does not staff such temporary work-site offices with agents or employees authorized to accept service of process.

The majority's observation that defendant maintains "business offices" in New York City (meaning the temporary trailer offices at work sites) is of no help in determining whether plaintiff's counsel had a reasonable basis for attempting to serve defendant at the street corner near what had been—three years before—plaintiff's work site. In fact, it is clear that no such reasonable basis existed when one reads plaintiff's counsel's own explanation for the choice of location at which to attempt service. That explanation is as follows:

> "Prior counsel's notes showed an address for defendant . . . at 40th Street and 11th Avenue. We assumed his information was correct and as the Statute of Limitations was approaching we immediately placed the case into suit and sent it out to a process server. An affidavit of service was returned . . . which indicated that it had been served on defendant's managing agent 'John' Thomas with a physical description. We believed that everything was in order."

Thus, by counsel's own admission, his law firm did not, before attempting to serve process in this action, make any inquiry of its own—not in telephone directories, not on the Internet, not to government offices—to determine where defendant could be validly served. Counsel relied solely on a street corner address shown on "notes" in the file received from plaintiff's prior counsel, who, the record reveals, had been retained to pursue plaintiff's workers' compensation claim, not to sue defendant. The unreliability of this information is underscored by the fact that, far from being the product of any investigation, it had been provided by plaintiff himself, who stated in his affidavit that he had told his prior counsel that defendant could be

contacted at the street corner in question based on the fact that defendant "had an office at the job location" where the accident occurred. Aside from relying on this cursory information in prior counsel's file, there is no indication that plaintiff's present counsel took any steps, at any time during the service period or for more than a year thereafter, to locate defendant.[1]

In January 2001, three months had passed since the purported service of process in October 2000, and plaintiff's counsel still had received no response to the complaint. Accordingly, on or about January 10, 2001, plaintiff's counsel sent defendant, by certified mail, a default letter addressed to defendant at "40th Street & 11th Avenue," i.e., the same location where service had been attempted the prior October. Not surprisingly, counsel received no response to the default letter, and the return-receipt card for the letter was returned unsigned. Nonetheless, for a year after sending the January 2001 default letter, plaintiff's counsel made no further efforts to determine whether the summons and complaint had been delivered to an appropriate person, or whether the papers had been received by defendant at all.

In the eyes of the majority, counsel's sending the January 2001 default letter to the same street corner address where service had previously been attempted "underscore[s]" the "apparent good faith" of plaintiff's efforts, and "indicates a certain diligence, even if it was misplaced and inadequate." I do not understand these comments, which redefine the concept of diligence to include efforts that are "misplaced and inadequate." Even if the original choice of an incorrect location for service could be deemed an understandable mistake, counsel's failure to double-check whether defendant was actually located there after the complaint had gone without response for three months (which was true as of January 2001) cannot be explained. Under such circumstances, counsel could not reasonably have believed that sending a follow-up letter to the very same dubious "address" would do anything to resolve whether defendant had received notice of the action.

---

1. Although the majority points to some New York City addresses for defendant that plaintiff's counsel ultimately turned up on the Internet, this Internet search was conducted in July 2002, in response to defendant's motion to dismiss, long after the statutory service period had expired in December 2000. Moreover, the location where service was attempted was not one of the addresses yielded by this Internet search. Thus, I fail to see how the belated Internet search might be of any significance to this appeal.

Plaintiff's counsel's conduct in connection with the January 2001 default letter "underscores," not the "apparent good faith" detected by the majority, but, to the contrary, counsel's utter lack of diligence in seeing to proper service in this matter. In this regard, counsel's conduct after getting back the unsigned return-receipt card for the default letter is perhaps more telling than the original sending of the letter itself. Again, for a year after receiving the unsigned return-receipt card, counsel did nothing to determine whether defendant had received notice. To explain this inaction, counsel stated in his subsequent affirmation that "the fact that we got a card back [even though it was unsigned] caused us to believe in good faith that the letter was received." Although the majority stresses this self-serving proclamation of counsel's "good faith" belief in defendant's receipt of the default letter, I am hard-pressed to understand how the return of an *unsigned* return-receipt card could reasonably justify a belief that the letter had been received. At a minimum, diligence demanded further investigation after the return-receipt card came back unsigned. Admittedly, no such investigative efforts were undertaken.

In any event, plaintiff's counsel allowed the matter to lie dormant for nearly another year after January 2001. Then, at the end of 2001, plaintiff moved for a default judgment. It was not until after the default motion was granted in December 2001 that plaintiff's counsel began to look for other ways to contact defendant, it finally having occurred to counsel, nearly a year and a half after commencing the lawsuit, that (in counsel's own words) it was "odd that [defendant] would allow the default to go to judgment unopposed." At that point, on February 5, 2002, defendant received, by mail directed to a job site at Carnegie Hall, notice of the order granting the default judgment. This notice of the default order, which came almost a year and a half after the action was commenced, was defendant's very first notice of the lawsuit itself.[2] Notably, the majority opinion omits any reference to the undisputed fact that defendant did not receive any notice of this action until February 2002.

---

**2.** As noted by the majority, within the year-and-a-half period between the commencement of this action and defendant's first receipt of notice thereof, plaintiff's counsel was displaced from its offices for six weeks due to the terrorist attacks of September 11, 2001. Beyond question, that six-week period cannot be held against plaintiff in determining whether to extend his time to serve. Obviously, however, the attack-related disruption of counsel's business cannot excuse the lengthy periods of inaction that preceded and followed it.

In March 2002, the parties stipulated that plaintiff would accept defendant's answer. Consistent with the stipulation, defendant served an answer raising the defense of lack of personal jurisdiction. (Contrary to the majority's assertion, defendant appeared in the action by serving an answer [see CPLR 320 (a)].) Defendant then timely moved (see CPLR 3211 [e]) to dismiss the complaint on the ground of lack of personal jurisdiction, due to improper service, pursuant to CPLR 3211 (a) (8). In support of the motion, defendant submitted the affidavit of its insurance coordinator, who attested to defendant's lack of an office at the place where plaintiff purported to serve it, the nonexistence of any employee or agent named " 'John' Thomas" on the date in question, and defendant's failure to receive any notice of the lawsuit until February 2002.

Plaintiff's counsel argued in the papers opposing defendant's motion to dismiss that, if Supreme Court were not willing simply to deny the motion, it should grant plaintiff additional time to effect service "in the interests of justice." This was plaintiff's first and only application to Supreme Court for an extension of time to serve process. It was made in July 2002, more than a year and a half after the 120-day period for service provided by CPLR 306-b had expired on December 30, 2000, and about five months after plaintiff had finally given defendant notice of the claim in February 2002.

In deciding the motion to dismiss, Supreme Court correctly found that the service plaintiff purportedly made on October 5, 2000 was invalid, and that plaintiff's counsel had not been diligent in making such service in reliance solely on the sketchy information that plaintiff himself had provided to his prior attorney. As the court aptly noted, "[t]here was no basis for his counsel to assume either that plaintiff would be familiar with the requirements of proper service upon a corporation, or that plaintiff would know who the proper person would be for service of process in a company for whom he did not work." The court further observed that plaintiff's counsel "failed to pursue even a cursory investigation into the [40th Street and 11th Avenue] address's validity when indications that the address might be incorrect arose." Nonetheless, based on its view that "[d]efendant has not demonstrated that it would be prejudiced in any way if this action were to proceed on the merits," the court denied the motion to dismiss, and, under the "interest of justice" prong of CPLR 306-b, granted plaintiff an additional 20 days to serve the summons and complaint.

In considering the motion court's decision, it should be noted at the outset that the Court of Appeals' unanimous holding in *Leader* directly contradicts the motion court's view, adopted by the majority, that plaintiff's extraordinary delay in effecting service of process cannot be deemed, in the absence of an evidentiary showing of some sort, to have caused defendant any prejudice. In affirming the denial of an extension of time to serve process in *Hafkin v North Shore Univ. Hosp.* (one of the appeals addressed by the *Leader* opinion), the Court of Appeals stated that the fact that the *Hafkin* defendants "had no notice of plaintiffs' claims [subject to a 2½-year limitations period] for nearly three years after their accrual," by itself, led "to an inference of substantial prejudice" (97 NY2d at 107). In this case, which is governed by a three-year limitation period, it is undisputed that defendant had no notice of the claim for nearly 4½ years after it accrued. While "[n]o one factor is determinative" in the CPLR 306-b "interest of justice" analysis (*id.* at 106), it is beyond dispute that the defendant before us has, in fact, been prejudiced by the lengthy delay—nearly half again as long as the limitation period—in its receiving any notice of plaintiff's claim.

If a delay of the magnitude of the one at issue here did not lead to an inference of substantial prejudice to the defendant, any application for an extension of time to serve under the rubric of the "interest of justice" would be granted as a matter of course, unless the defendant could prove some particularized prejudice arising from the delay. That this is not the law is established by *Leader*, in which the denial of an extension in *Hafkin* was affirmed without any showing of prejudice to the defendants beyond the fact that nearly three years had passed without their receiving notice of the claim (*see* 97 NY2d at 107). Today, in fact, a different bench of this Court unanimously reaffirms this principle in *Yardeni v Manhattan Eye, Ear & Throat Hosp.* (9 AD3d 296, 297 [2004]) in which substantial prejudice is inferred from "defendants' lack of notice of [the claim] until they were served . . . after the expiration of the applicable statute of limitations" (citing *Leader*). Notably, such prejudice is inferred in *Yardeni* even though notice of the claim was received a mere four months after the lapse of the statute of limitations.[3] Further, while it is true that the denial of a motion for an extension will be prejudicial to the

---

**3.** *See also Henig v Good Samaritan Med. Ctr.*, 301 AD2d 571, 571 (2003), *lv denied* 100 NY2d 510 (2003) (noting existence of "inference of substantial

*(n. cont'd)*

plaintiff where the statute of limitations has expired, the foregoing authority demonstrates that relief should be denied notwithstanding such prejudice where, as here, the other relevant factors weigh heavily against granting the extension.

The majority's efforts to explain away *Hafkin (supra)*, *Yardeni (supra)*, *Ludemann (supra)* and *Estate of Jervis (supra)* are unavailing. Each of those cases plainly holds that a defendant suffers substantial prejudice—not merely, as the majority would have it, "loss of a procedural or technical advantage"—where the plaintiff fails to provide actual notice of the claim until a substantial period of time after the expiration of both the statute of limitations and the 120-day statutory service period.[4] This is precisely the scenario presented by this appeal. It is irrelevant to the prejudice analysis that plaintiff made an ineffective attempt to serve defendant within the service period, since it is undisputed that this attempt failed, not only to obtain jurisdiction over defendant, but also to provide defendant with any actual notice of the claim. Notably, this case's year-and-a-half gap between expiration of the statute of limitations and defendant's first receipt of notice is more than twice as long as the eight-month gap in *Hafkin (see* 97 NY2d at 102-103); more than three times as long as the five-month gap in *Ludemann (see* 292 AD2d at 429); more than four times as long as the four-month gap in *Yardeni*; and more than six times as long as the $2^{1}/_{2}$-month gap in *Estate of Jervis (see* 279 AD2d at 367).

Since defendant has been substantially prejudiced by the lengthy delay of its receipt of notice of plaintiff's cause of action, the grant of an extension of time to serve can be deemed to comport with the interest of justice only if the remaining factors recognized in *Leader* weigh in plaintiff's favor. Far from weighing in plaintiff's favor, however, these other factors actu-

prejudice to the defendants based upon the lengthy delay" in making service); *Ludemann v Maisel*, 292 AD2d 428, 429 (2002) (extension was properly denied where, inter alia, defendant was not served until five months after expiration of statute of limitations and the 120-day service period, and there was no evidence that defendant "was aware of this litigation until three years after the cause of action accrued"); *Estate of Jervis v Teachers Ins. & Annuity Assn.*, 279 AD2d 367, 367 (2001) (affirming denial of extension where defendants were served about $2^{1}/_{2}$ months after statute of limitations expired, and about two months after 120-day service period expired).

4. *Busler v Corbett* (259 AD2d 13 [1999]), the case cited by the majority in this regard, is easily distinguishable. Since the defendants in *Busler* were served only 28 days after the expiration of the service period (*id.* at 17), the prejudice from the delay of service was minimal in that case.

ally weigh strongly in favor of defendant, as the following analysis demonstrates.

To begin, plaintiff utterly failed to use reasonable diligence—or, indeed, any measure of diligence at all—in attempting to effect service within the 120-day statutory period. To reiterate, although the statute provides a full 120 days in which to effect service from the date of the filing of the action (rendering it irrelevant that plaintiff's counsel was retained just before the action was commenced), plaintiff's counsel made no independent effort, within that 120-day period and for more than a year thereafter, to determine an appropriate place at which to serve defendant. Instead, counsel simply relied on the information plaintiff himself had provided to his prior attorney that defendant had maintained some sort of office at an intersection near plaintiff's job site. I do not see how one service attempt based on such patently unreliable information, followed by a letter sent about five months later to the same street corner address and then by a year of near-total inaction, can be characterized as (in the majority's words) "continuous good faith efforts to give defendant notice of the action."

The majority attributes to me the view that the "interest of justice" prong of CPLR 306-b should never be invoked "if an attorney does not independently verify whether the original service was properly made by the process server." While that is not my position, the majority's remark reveals a misperception of the problem presented by this appeal. The fundamental defect in plaintiff's service attempt was not, as the majority seeks to recast it, the manner in which the process server carried out counsel's instructions. Rather, counsel's instructions were themselves defective in the first place. I fail to see how the unreliable information that counsel furnished to the process server was rendered reliable when it subsequently reappeared in the process server's affidavit of service.

The majority appears to suggest that relief under CPLR 306-b should be granted automatically whenever there is an attempt to make service during the 120-day service period, even when that attempt is subsequently found to have been ineffective. That position cannot be the law, as it is at odds with *Leader*, in which the Court of Appeals made clear that the determination of whether to extend time to serve under CPLR 306-b should be based on a "weighing [of] all relevant factors" (97 NY2d at 107). In any event, none of the cases cited by the majority supports its position. In each of those cases, the defendant suffered

no prejudice because—unlike defendant in this case—it actually received notice of the action within the 120-day period, albeit from a technically invalid service attempt (*see Simonovskaya v Olivo*, 304 AD2d 553, 553-554 [2003] [invalid "nail and mail" service]; *Earle v Valente*, 302 AD2d 353, 353-354 [2003] [same]; *Wideman v Barbel Trucking*, 300 AD2d 184, 184-185 [2002], *revg* 2001 NY Slip Op 50020[U] [invalid service on Secretary of State resulted in defendant's receipt of process by mail]).

The "careless[ness]" of plaintiff's attempt to serve defendant is particularly difficult to understand when one considers that counsel easily could have avoided any question about the validity of service by delivering the summons and complaint to the Secretary of State pursuant to Business Corporation Law § 306. Indeed, this procedure is provided specifically to ensure that jurisdiction of any corporation doing business in the state is readily obtainable without the need to conduct an extensive investigation. In view of the availability of this option, I do not understand how the majority can bestow the label of "apparent good faith" on plaintiff's patently deficient efforts to serve defendant.

Another factor relevant to the interest of justice inquiry under CPLR 306-b is "the promptness of a plaintiff's request for the extension of time" (*Leader*, 97 NY2d at 105-106). This factor weighs heavily against granting an extension in this case. Plaintiff's counsel was on notice that the attempted service had failed no later than early 2001, when he received an unsigned return-receipt card for the default letter. Instead of investigating the matter and moving for an extension at that point—a relatively short time after the 120-day service period expired on December 30, 2000—plaintiff did nothing for about a year. Even after his counsel finally made contact with defendant in February 2002, plaintiff continued to ignore his known failure to effect valid service for five more months. It was not until July 2002 (a year and a half after expiration of the service period), and only in his papers opposing defendant's motion to dismiss, that plaintiff finally requested an extension of his time to serve process.

Notably, plaintiff's delay in seeking an extension was far longer than both the nearly eight-month delay from the expiration of the 120-day period in *Hafkin* (*see* 97 NY2d at 107), and the approximately six-month delay from the expiration of the 120-day period that we found "unacceptably protracted" in *Estate of Jervis* (279 AD2d at 368; *see also Yardeni v Manhattan Eye, Ear*

& *Throat Hosp., supra* [extension requested eight months after service period denied]; *Burwell v Yonkers Gen. Hosp.*, 6 AD3d 478, 479 [2004] [extension requested 10 months after service period denied]; *Ludemann v Maisel*, 292 AD2d at 429 [extension requested 16 months after service period denied]; *McGregor v Volvo GM Heavy Truck Corp.*, 286 AD2d 483, 484 [2001] [extensions requested 211 days and 391 days after service period denied]).

The majority asserts that the final "five-month delay [in plaintiff's request for relief under CPLR 306-b] is in large measure attributable to defendant's, not plaintiff's, conduct." Apparently, the majority means to suggest that defendant is somehow responsible for plaintiff's counsel's "mistaken assumption . . . that jurisdiction would not be challenged." This position finds no support in the record. Nothing in the parties' bare-bones stipulation of March 2002 precluded defendant from raising the defense of lack of personal jurisdiction. Further, there is no indication that defense counsel ever said or wrote anything that could reasonably have led plaintiff's counsel to believe that a jurisdictional defense would not be pursued.[5] Thus, in blaming defendant for plaintiff's five months of inaction after February 2002, the majority bestows on plaintiff a substantial benefit for which he never bargained, namely, the waiver of defendant's jurisdictional defense.

In sum, in excusing a delay in service of process that continued for as long as plaintiff's did in this case, the majority effectively casts aside any meaningful concept of a statute of limitations. Again, as a result of plaintiff's lack of diligence, defendant did not learn of this action until a year and a half after the statute of limitations had expired, and more than a year after expiration of the statutory 120-day service period. Further, contrary to the majority's assertion that this is an "apparently meritorious case," plaintiff's vague and conclusory affidavit of merits actually tells us very little about the basis for the claim. The relevant authorities demonstrate that, under these circumstances, granting plaintiff an extension of time to serve the summons and complaint cannot be deemed to comport with the

---

**5.** Indeed, if the parties' stipulation did preclude a jurisdictional defense, the question presented by this appeal (whether plaintiff was properly granted an extension of time to serve process) would be completely academic. Since the stipulation simply does not address the issue of personal jurisdiction over defendant, the majority's characterization of the stipulation as an attempt "to rectify the error" of ineffective service is inaccurate.

interest of justice. Indeed, the relevant factors weigh so heavily in favor of defendant, that Supreme Court abused its discretion, as a matter of law, in granting plaintiff the requested extension. Accordingly, I would reverse and grant defendant's motion to dismiss the complaint.

NARDELLI, J.P., and ELLERIN, J., concur with TOM, J.; FRIEDMAN, J., dissents in a separate opinion.

Order, Supreme Court, New York County, entered October 24, 2002, affirmed, without costs.