OPINION OF THE COURT
Paul A. Victor, J.
The Issues Presented
The following novel legal issues, each of which is an issue of first impression, are presented by defendant’s motion for summary judgment and plaintiffs cross motion for summary judgment:
1. Is a prayer for relief in a complaint an “application” to the court (within the meaning of General Municipal Law § 50-e) for the purpose of seeking permission for the late filing of a notice of claim; or is the failure to bring a motion or special proceeding fatal to plaintiffs complaint?
2. Can the next of kin of a deceased person assert a claim for violation of the Human Rights Law on behalf of the deceased with respect to the postdeath treatment of the body of the deceased?
Facts and Procedural History
This is a case alleging, in essence, a wrongful autopsy on the body of the decedent Junius Kellogg, who died at the age of 71 at the Bronx Veterans Medical Center after being removed, at *668 his own request, from a life support system. Junius Kellogg was rendered quadriplegic by an automobile accident which occurred 44 years prior to his death.
The complaint in this action asserts two causes of action. Plaintiff, the administrator of the estate of Junius Kellogg, in both an individual and representative capacity, seeks, in the first cause of action in the complaint, compensatory and punitive damages for intentional infliction of emotional distress, arising out of the alleged unauthorized autopsy conducted by the Office of the Chief Medical Examiner on the body of the decedent Junius Kellogg. In a second cause of action, plaintiff seeks similar damages based on the allegation that the autopsy constituted an unlawful discrimination predicated on decedent’s disability.
The defendant City of New York previously moved pursuant to CPLR 3211 to dismiss each cause of action and/or for summary judgment pursuant to CPLR 3212. Defendant asserted, in essence, that the New York City Charter provided, as a matter of law, authority and discretion for the Office of the Chief Medical Examiner (OCME) to perform an autopsy on the body of the decedent Junius Kellogg. Defendants claimed that the decedent died “suddenly when in apparent health” and in a “suspicious or unusual manner,” because, among other things, “it was suspected [by the Office of the Chief Medical Examiner] that the automobile accident [which occurred some 44 years earlier] contributed to [his] death.” Motions made both by defendant and plaintiff for summary judgment were denied without prejudice to renew and reargue upon a sufficient record. The pertinent contentions and this court’s findings and legal conclusions are set forth in a prior opinion of this court, all of which are subsumed herein by reference. (See, Kellogg v Office of Chief Med. Examiner of City of N.Y., 189 Misc 2d 756 [2001].)
Plaintiff now renews the motion for summary judgment based, in part, on the deposition testimony of Dr. Schmuter, the medical examiner who made the decision to conduct the autopsy. Dr. Schmuter denied that any suspicion of criminal activity or of sudden death played a part in the decision to conduct an autopsy. However, based upon the suspicion that the 44-year-old automobile accident, in her opinion, contributed to the death of the decedent, she characterized the death as “accidental,” and therefore eligible for autopsy. In the autopsy report the “cause of death” was stated, among other things, to be primarily “atherosclerotic and hypertensive disease” with an alleged con *669 tribution by “respiratory and gastrointestinal complications of quadriplegia due to remote cervical spine injury.”
The defendants cross-move for summary judgment, arguing that: (1) plaintiff failed to timely file a notice of claim; (2) that leave to amend the answer to allege affirmative defenses should be granted; (3) that summary judgment should be granted to the City on the first cause of action, as the OCME was mandated and justified in conducting an autopsy; (4) that the cause of action for discrimination fails to state a cause of action; and (5) that summary judgment should be granted dismissing the discrimination claim as factually unsupported.
As to the issue of the timeliness of the filing of the notice of claim, it is not disputed that the autopsy was conducted on September 17,1998; that the plaintiff was appointed administrator of the decedent’s estate on June 18, 1999; and that, immediately subsequent to said appointment, plaintiff in his individual and representative capacity filed the notice of claim on June 25, 1999 (i.e., within days of the appointment of an administrator but more than nine months after the autopsy was performed). This action was commenced on September 21, 1999 (i.e., within one year and 90 days of the autopsy). The court notes, in addition, that the complaint alleged the above relevant factors regarding the filing of the notice of claim, and that, in the prayer for relief in the complaint, an “application” is made by plaintiff to the court that the notice of claim served in this action be deemed timely served nunc pro tunc. In addition, it is noted that the allegations contained in the complaint are denied in the defendants’ answer, except defendants admit “that a notice of claim was presented, that more than thirty days have elapsed without adjournment thereof.”
Discussion
Cause of Action Belongs to Surviving Next of Kin
A cause of action for wrongful autopsy does not require the appointment of a representative since the cause of action properly belongs to the individual survivors. In the seminal case of Foley v Phelps (1 App Div 551, 556 [1st Dept 1896]), the Court held that “an unauthorized and unlawful mutilation of the corpse before burial, gives rise to an action for damages in favor of the surviving wife of the deceased.” (Emphasis added.) In addition, in Darcy v Presbyterian Hosp. (202 NY 259 [1911], rearg denied 203 NY 547 [1911]), the Court of Appeals held as follows:
*670 “The most elaborate consideration of the question in the courts of this country appears in the case of Larson v. Chase (47 Minn. 307), in which, after an examination of the authorities both in this country and in England, the conclusion is reached that while no action can be maintained by the executor or administrator upon the theory of any property right in a decedent’s body, the right to the possession of a dead body for the purpose of preservation and burial belongs to the surviving husband or wife or next of kin, in the absence of any testamentary disposition-, and this right the law will recognize and protect from any unlawful mutilation of remains by awarding damages for injury to the feelings and mental suffering resulting from the wrongful acts, although no pecuniary damage is alleged or proved . . .
“We shall not at this time attempt a further discussion of the question, for there is little which we can add by way of argument to that which has already been well stated in the cases to which reference has been made. The rule adopted in the Minnesota case fully meets our approval, and consequently the plaintiff, being the mother and the nearest surviving next of kin to the decedent, is entitled to maintain the action and to recover damages for her wounded feelings and mental distress.” (Emphasis added.)
Since no evidence has been produced by plaintiff that there was a testamentary disposition of decedent’s remains, the action can only be maintained by next of kin and, therefore, the notice of claim in this action was required to be filed by decedent’s next of kin within 90 days following the conduct of the autopsy.
Application for Leave to File a Late Notice of Claim
It is well established that a late service of a notice of claim without leave of the court is a nullity (see, Kokkinos v Dormitory Auth. of State of NY., 238 AD2d 550 [2d Dept 1997]; De La Cruz v City of New York, 221 AD2d 168 [1st Dept 1995]) and that leave to serve a late notice of claim must be made to the court within the statutory limitations period (i.e., one year and 90 days). It is also well established that, if a late notice of claim is filed within the limitations period, but without leave of court, and an application for leave to serve a late notice is filed after the limitations period expires, the court lacks the power to excuse that late filing. (See e.g., Hall v City of New York, 1 AD3d 254 *671 [1st Dept 2003]; Armstrong v New York Convention Ctr. Operating Corp., 203 AD2d 170 [1st Dept 1994]; Carr v City of New York, 176 AD2d 779 [2d Dept 1991]; Bourguignon v City of New York, 157 AD2d 644 [2d Dept 1990].)
The defendants argue, initially, that the notice of claim in this case was not timely filed and that no application has been made within the limitations period that would provide this court with the authority to excuse the late filing. It is not seriously disputed that if the claim is properly measured from the appointment of the plaintiff as the representative of the decedent’s estate, the notice of claim was timely filed; and that, if the time for serving a notice of claim is properly measured from the date of the autopsy, the notice of claim was not timely filed. General Municipal Law § 50-e (1) (a) provides:
“In any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation, as defined in the general construction law, or any officer, appointee or employee thereof, the notice of claim shall comply with and be served in accordance with the provisions of this section within ninety days after the claim arises; except that in wrongful death actions, the ninety days shall run from the appointment of a representative of the decedent’s estate.” (Emphasis added.)
Thus, only in wrongful death actions is the time for service of a notice of claim measured from the appointment of a representative of the estate. (See e.g., Mack v City of New York, 265 AD2d 308 [2d Dept 1999].) Obviously, an action for wrongful autopsy cannot qualify as a wrongful death action, which is an action expressly created by statute and specifically defined in section 5-4.1 of the Estates, Powers and Trusts Law. The General Municipal Law exempts only wrongful death actions from the application of the general rule. However, General Municipal Law § 50-e (5) vests courts with discretion to permit late filing of a notice of claim upon “application” appropriately made to the court within the limitations period. However, the discretion provided by that section is not triggered, and the court lacks jurisdiction, unless an “application” is timely made.[1]
Since the rendering of the Court of Appeals decision in Pier-son v City of New York (56 NY2d 950 [1982]), it is clear that *672 “the application for the extension may be made before or after the commencement of the action but not more than one year and 90 days after the cause of action accrued, unless the statute has been tolled . . . .”* [2] (Id. at 954.) The Pierson court did not, however, define the term “application,” and no case brought to this court’s attention since then has definitively established the meaning of the term “application” as used in the statute. It is the normal procedure for a plaintiff to seek to file a late notice of claim either by way of motion in a pending action (see e.g., Maldonaldo v City of New York, 7 AD3d 582 [2d Dept 2004]) or by way of special proceeding if no action is pending (Matter of Sullivan v Lindenhurst Union Free School Dist. No. 4,178 AD2d 603, 604 [2d Dept 1991] [“In the absence of a pending action, an application for leave to serve a late notice of claim must be brought as a special proceeding (see, Rogers v New York City Hous. Auth., 169 AD2d 763; Matter of Eso v County of Westchester, 141 AD2d 542; see also, Farber v County of Hamilton, 158 AD2d 902)”]). These cases indicate that, since no action is pending, a mere motion is inappropriate.
No case, however, has ever addressed whether the application for an extension of time to file may be made within the *673 complaint when the action is commenced. In Davis v City of New York (250 AD2d 368, 369-370 [1st Dept 1998]), the Court stated “it has previously been held that service of a summons and complaint within the limitations period does not excuse the failure to file a timely notice of claim, nor is it an acceptable substitute for a timely notice of claim . . . .” It is not, however, the mere commencement of the action which takes the case at bar out of the usual rule which is stated in Davis (supra). Instead, it is the request for relief in the complaint itself which distinguishes the case at bar from others in which a summons and complaint were filed and served within the statutory period. All of the statutory signs and signals appear to suggest that such a request, made within the body of a complaint, qualifies as an “application” within the meaning of the General Municipal Law. If so considered, the application would be timely and the court would have jurisdiction and discretion to grant relief to the plaintiff, and deem the notice of claim timely served nunc pro tunc.
CPLR 105 (d) defines “civil judicial proceeding” as follows: “A ‘civil judicial proceeding’ is a prosecution, other than a criminal action, of an independent application to a court for relief. (Emphasis added.) The commencement of an action in itself constitutes an “application,” and, under the facts presented here, the request for relief in the complaint asked that the court grant plaintiff permission to file a late notice of claim. Under these unusual circumstances, the prayer for relief in the complaint appears to qualify as an “application” within the meaning of General Municipal Law § 50-e. The legislative history of the 1976 amendments to General Municipal Law § 50-e (5) (L 1976, ch 745, § 2) also supports the conclusion that the request for relief contained within the complaint constitutes an “application” within the meaning of General Municipal Law § 50-e (5). The court notes that the amended version of General Municipal Law § 50-e (5), which was enacted in 1976, omitted references to notices of claim being filed by affidavit or motion and was revised using no specific terms as to how the “application” was to be brought before the court. Thus, prior to the 1976 amendments, the statute required that:
“Application for such leave must be made within the period of one year after the happening of the event upon which the claim is based, and shall be made prior to the commencement of an action to enforce the claim, upon affidavit showing the par *674 ticular facts which caused the delay, accompanied by a copy of the proposed notice of claim. The application shall be made returnable at a trial or special term of the supreme court, or of the county court, in the county where an action on the claim could properly be brought for trial, and due notice thereof shall be served upon the person or party against whom the claim is made, in the manner specified in subdivision three.” (General Municipal Law § 50-e [former (5)] [emphasis added].)
Moreover, with respect to mistakes, omissions, irregularities, or defects, the former statute stated: “Application for such relief, if made before trial, shall be by motion, on affidavits-, if made before the action is commenced, shall be by motion, on the petition of the claimant, or someone on his behalf. Failure to serve more than one copy may be corrected by such motion.” (General Municipal Law § 50-e [former (6)] [emphasis added].) All of the foregoing language was deleted from the revised statute enacted in 1976, and the Legislature added subdivision (7), which directs plaintiffs to each of the appropriate courts in which such “applications” can be made.[3] Clearly, the Legislature’s deletion of specific language relating to notes, affidavits and the like, and the replacement of the foregoing language with the more general term “application,” support the court’s conclusion that an “application” need not always be made by way of motion or special proceedings. In addition, the Memorandum of the Judicial Conference in support of the amendments recites that:
“These amendments introduce a degree of flexibility long needed in this area of law without subverting the basic purposes of the notice of claim provisions.
It is intended that these remedial amendments will overrule older decisional law which construed rigidly and narrowly the provisions relating to late filing, and will enable the court to construe these provisions liberally to do substantial justice.” (1976 NY *675 Legis Ann, at 9 [emphasis added].)
As stated in McKinney’s Consolidated Laws of NY, Book 1, Statutes § 321, Comment, referring to the proper interpretation of remedial statutes, “Such statutes should be so construed as to give effect to the intention of the lawmakers, that is, to effect or carry out the reforms intended and to promote justice, particularly where the statutes are designed to correct imperfections in a prior law.” In addition, the statute, being as well an amendatory act, requires that the court, “[i]n arriving at the legislative intent, [parse] the language of an amendment ... in the light of previous decisions construing the original act, it being presumed that the Legislature had such judicial construction in mind when adopting the amendment.” (Statutes § 191, Comment.) In light of these directives concerning the interpretation of the Legislature’s intent, the purposeful deletion of the references to written “affidavits” and “due notice” must be viewed as liberalizing the mechanism by which such applications .were to be brought before the court.
Moreover, putting aside those devices by which the court intuits the intent of the Legislature, the court’s present conclusion in this matter accords with the expressly stated purpose of the 1976 amendments to General Municipal Law § 50-e (5). The CPLR Advisory Committee to the Judicial Conference, which drafted the amendments, stated “[i]t is intended that older judicial decisions construing the provisions of section 50-e rigidly and narrowly will be inapplicable as a result of these remedial amendments, which will enable the courts to apply these provisions in a more flexible manner to do substantial justice.” (14th Ann Report of Jud Conf on CPLR, reprinted in 21st Ann Report of NY Jud Conf, ch 6, at 278, 288, and 1976 McKinney’s Session Laws of NY, at 2072, 2078.) In addition, it is observed that the courts have since recognized that these amendments afford greater flexibility in exercising discretion in granting leave to file a late notice of claim. (See, e.g., Heiman v City of New York, 85 AD2d 25, 28 [1st Dept 1982]; Barnes v County of Onondaga, 103 AD2d 624, 627 [1984], affd 65 NY2d 664 [1985].)
The First Department recently decided an appeal involving a plaintiff who failed to seek relief by way of formal cross motion under CPLR 306-b. The Court noted that “[s]ince defendant fully addressed the issue of whether plaintiff should be afforded relief pursuant to CPLR 306-b in its moving papers, the absence of a formal motion by plaintiff was not an impediment to the court’s award of such relief upon his informal request.” (Slate v *676 Schiavone Constr. Co., 10 AD3d 1, 4 [1st Dept 2004].) The Court further observed:
“In reviewing the court’s exercise of discretion in this case, we note that, for present purposes, there appears to be a valid Labor Law § 240 claim arising from this alleged fall from a defective scaffold. There can be no dispute that plaintiff would be severely prejudiced if he were not granted relief under CPLR 306-b in that his action would be barred and he would be deprived of the opportunity to seek redress for his injuries from defendant.” (Id.)
In the present case, the same policy considerations are at issue, i.e., that in exalting form over substance, a plaintiff will be deprived of an opportunity to seek redress for alleged wrongful conduct. Therefore, under the circumstances of this case, the court concludes that the prayer for relief contained in the complaint constitutes an “application” within the meaning of General Municipal Law § 50-e; that this application of General Municipal Law § 50-e is consistent with the Legislature’s purpose underlying the revised statute; and that this “application” was timely and properly made. With respect to the merits of plaintiff’s timely application to serve a late notice of claim, the court has considered all of the relevant factors set forth in section 50-e and, in the exercise of its discretion, determines that plaintiff has made a sufficient showing to warrant granting the application, and thus determines that the notice of claim is deemed to have been timely filed nunc pro tunc.
Relief Pertaining to the Second Cause of Action
The court notes, at the outset, that, as the second cause of action alleges unlawful discriminatory practices under the Human Rights Law, the notice of claim requirement does not apply. (Palmer v City of New York, 215 AD2d 336 [1st Dept 1995]; compare Picciano v Nassau County Civ. Serv. Commn., 290 AD2d 164 [2d Dept 2001] [human rights cause of action not a tort within meaning of notice of claim statute].)
Plaintiff contends that the deceased was subject to discrimination based on disability (quadriplegia). The complaint, which refers to Executive Law § 292 (9); § 292 (21) (a), and Administrative Code of City of New York § 8-102 (16) (a), (b) (1), states:
“as and for a second cause of action—
“discrimination on the basis of disability
“11. Defendants are each a place of public accom *677 modation within the meaning of the applicable provisions in the New York State Executive Law and the New York City Administrative [Code], to wit: New York State Executive Law, Section 292 (9) and New York City Administrative Code, Section 8-102 (9).
“12. The late deceased Junius Kellogg has a disability within the meaning of the applicable provisions in the New York State Executive Law and the New York City Administrative [Code], to wit: New York State Executive Law, Section 292 (21) (a) and New York City Administrative Code, Section 8-102 (16) (a) (b) (1).
“13. The body of the deceased Junius Kellogg was defaced by agents and/or employees of Defendants without justification and because Junius Kellogg had a disability, quadriplegia, which caused him to use a wheelchair.”
Despite the general presumption in favor of the protection of the rights of persons with disabilities (see, Statutes § 323 [entitled “Rights of persons under disability”]), the enabling statute here must be strictly construed since the right to sue the municipality for discrimination is in derogation of the sovereignty of a municipality. Waiver of immunity by inference is disfavored. (Krohn v New York City Police Dept, 2 NY3d 329 [2004] [reference to recovery of punitive damages in New York City Human Rights Law did not waive city’s immunity to punitive damages liability in gender-based employment discrimination action].) The court is, therefore, constrained to limit the reach of the statute to its stated bounds (see, Matter of Perez v New York State Human Rights Appeal Bd., 71 AD2d 150 [3d Dept 1979]; Belanoff v Grayson, 98 AD2d 353, 358 [1st Dept 1984]).
This court has been unable to locate any case in which, as here, an action was permitted to be brought on behalf of the survivors of a deceased for an alleged postdeath act of discrimination to a corpse. The court concurs with the defendants’ argument that the statutory protections only extend to “persons aggrieved” as defined in the Human Rights Law, which include any and all of the natural and artificial persons described in the statute. Section 8-502 (a) of the New York City Human Rights Law states that:
“Except as otherwise provided by law, any person claiming to be aggrieved by an unlawful discrimina *678 tory practice as defined in chapter one of this title . . . shall have a cause of action in any court of competent jurisdiction for damages, including punitive damages, and for injunctive relief and such other remedies as may be appropriate” (Administrative Code of City of NY § 8-502 [a] [emphasis added]; see Executive Law § 292 [1] [“When used in this article: 1. The term ‘person’ includes one or more individuals, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy, or receivers” (emphasis added)]).
Despite the fact that the term person includes “legal representatives,” this court does not believe that the statutory protections were meant to extend to a corpse. This is also apparent when one examines the enumerated categories defining discriminatory practices under either the City or State Human Rights Law, i.e., an unlawful discriminatory practice in employment; an unlawful discriminatory practice by a provider of public accommodation; an unlawful discriminatory practice with respect to the sale or rental of housing accommodations; or an unlawful discriminatory practice with respect to lending practices. None of them appear to apply to the present situation. (Administrative Code § 8-107 [entitled “Unlawful discriminatory practices”]; see also, Executive Law §§ 296, 296-a.)
Clearly, plaintiff does not have standing to allege a human rights violation on his own behalf or on the behalf of the deceased. In any event, since all alleged wrongful conduct to the body of the deceased may be addressed by the next of kin by recourse to an existing judicially authorized remedy (such as that alleged in the first cause of action herein), the failure to recognize a separate cause of action for discrimination in the circumstances now presented does not deprive plaintiff of a remedy for any perceived wrongful conduct.
Summary Judgment as to the First Cause of Action
This court declines to grant summary judgment to either side in this action. Whether or not the 44-year-old accident was medically related to the death of the plaintiffs decedent sufficient to warrant an autopsy is a finding which will depend in large part on the jury’s evaluation of expert medical testimony. The jury should be permitted to hear from defendant’s medical examiners in order to determine whether the death could rationally be perceived as “accidental.” (Alvarez v Prospect Hosp., 68 NY2d 320 [1986]; Stone v Goodson, 8 NY2d 8 [I960]; Knepka v Tall-man, 278 AD2d 811 [4th Dept 2000].)
*679 Conclusion
The plaintiffs notice of claim is deemed to have been timely filed and served nunc pro tunc. The motion and cross motion are denied to the extent that summary judgment is sought. That part of defendants’ motion seeking leave to amend the answer is granted. An amended answer shall be filed and served within 60 days after service of a copy of this order with notice of entry thereon. The defendants’ motion is granted to the extent of dismissing the second cause of action on the ground that plaintiff lacks standing and the complaint fails to state a cause of action. The motions are otherwise denied except as stated herein.
[Portions of opinion omitted for purposes of publication.]

. Section 50-e (5) provides in part that, “Upon application, the court, in its discretion, may extend the time to serve a notice of claim specified in *672 paragraph (a) of subdivision one. The extension shall not exceed the time limited for the commencement of an action by the claimant against the public corporation.” (Emphasis added.)

. This court does not reach the issue of whether, had there been a testamentary disposition, there would have been a tolling of the notice of claim filing requirements pending the appointment of a representative of the decedent’s estate. (For wrongful death claims, see infra.) The court notes that CPLR 210 (c) provides that the time within which to commence certain actions “accruing after death and before [the] granting] of letters” is computed as of the issuance of letters or three years after death, whichever is earlier— but this section seems to be confined in its application to discovery proceedings in Surrogate’s Court or other actions concerning the property of the estate of the deceased. In addition, it does not appear that any of the other provisions in CPLR 210 would afford a toll in the circumstances presented. However, there may be an issue as to whether equitable grounds exist for the imposition of a toll. In Kotlyarsky v New York Post (195 Misc 2d 150 [Sup Ct, Kings County 2003]), it was noted that, although both the doctrines of equitable estoppel and equitable tolling have a common origin, they are applied in different circumstances. Equitable estoppel has been held to be applicable where the plaintiff knew of the existence of the cause of action, but the defendant’s misconduct caused the plaintiff to delay in bringing suit. Equitable tolling, on the other hand, has been held to be applicable where the defendant wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action. Whether equitable tolling may be applied in the absence of wrongful conduct on the part of a defendant appears to be an open question. In any event, in view of the decision herein, the court need not reach this issue.

. The Legislature used the following language in the statutory amendment: “All applications under this section shall be made to the supreme court or to the county court in a county where the action may properly be brought for trial or, if an action to enforce the claim has been commenced, in the county where the action is pending. Where the application is for leave to serve a late notice of claim., it shall be accompanied by a copy of the proposed notice of claim.” (General Municipal Law § 50-e [former (7)] [emphasis added].) As noted, supra, the proposed notice of claim had already been filed and was fully identified in the complaint, and, therefore, it would have been redundant to annex another copy.